UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CRIMINAL ACTION NO. 4:13CR-19-JHM

UNITED STATES OF AMERICA                                                    PLAINTIFF

VS.

AARON RUSSELL                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Aaron Russell's motion to suppress the evidence obtained as a result of a search of 804 Pennbrooke Avenue on April 13, 2013 [DN 13]. Fully briefed, this matter is ripe for decision. For the reasons that follow, Defendant's motion is **DENIED**.

## I. BACKGROUND

On April 13, 2013, Sergeant Lohrn Frazier of the Owensboro Police Department approached Defendant's residence at 804 Pennbrooke Avenue after issuing a citation to a vehicle parked in the adjacent lot. The Defendant's residence is the last unit on a multi-unit building and it sits directly adjacent to a parking lot of an apartment building. Defendant's backyard area is directly visible from that parking lot. In addition, the parking lot and the multi-unit building share a sidewalk that runs from the end of the parking lot and all the way through the backyard area of the multi-unit building.

While standing in the adjacent parking lot, Sergeant Frazier could see Defendant smoking on his back porch. Sergeant Frazier asked Defendant whether he could search his home and Defendant said that he could not without a warrant. Sergeant Frazier then inquired about a red truck parked illegally in the adjacent lot. Defendant said that the owner of the truck was in his

home and that he would go get him for Sergeant Frazier. According to Sergeant Frazier, Defendant opened his backdoor enough so that Sergeant Frazier could see into the apartment. At that time, "Sergeant Frazier saw a stack of money and a 'burn boat,' a strip of folded aluminum foil with burnt residue commonly associated with use of methamphetamine." (Resp. to Mot to Suppress Evidence, DN 16, at 3). The driver of the truck then fled Defendant's house, but he was later apprehended by police.

A search warrant was issued on April 13, 2013 and Defendant now moves to suppress the search warrant.

## II. DISCUSSION

Defendant contends evidence obtained in the search should be suppressed for two reasons. First, Defendant contends that Sergeant Frazier viewed evidence illegally by standing within the curtilage of Defendant's residence. Second, Defendant argues that the two items, the stack of money and the "burn boat," observed by Sergeant Frazier were insufficient to constitute probable cause for a search. The United States responds to Defendant's first contention by arguing that Sergeant Frazier did not enter Defendant's curtilage, and if he did, then it would not matter because the Sergeant had the right to be at Defendant's back door under the "knock and talk" doctrine. The United States also argues that the affidavit sufficiently provided probable cause to issue a search warrant, and that even if lacked probable cause, Police officers acted in good faith upon the warrant.

### A. Curtilage of Defendant's Residence

The Defendant's first argument is that Sergeant Frazier illegally observed the items in Defendant's residence by standing within the curtilage of his home. "[T]he Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that

2

bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." United States v Dunn, 480 US 294, 300 (1987). To determine the extent of a person's curtilage, courts look to four factors:

> (1) the proximity of the area to the home; (2) whether the area is within an enclosure surrounding the home; (3) the nature and uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by passersby.

United States v. Dunn, 480 U.S. 294, 294-95 (1987). However, courts should apply these factors with an eye towards "the centrally relevant consideration—whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." Id. at 301.

As for the application of the factors to this case, the United States concedes that the first factor is met in this case. However, the United States argues Defendant's backyard fails to meet any other factor because it lacks any type of fence or enclosure and a shared sidewalk passes through it. Moreover, the fact that Sergeant Frazier could see Defendant smoking at his backdoor from an adjacent parking lot indicates that the Defendant failed to take any steps "to protect the area from observation" by the public. Additionally, Defendant fails to contest any of the facts offered by the United States concerning the backyard of the residence. Thus, there is no reason to consider the area entered into by Sergeant Frazier as "intimately tied to the home." Because the Court agrees with the United States that Sergeant Frazier did not illegally stand in the curtilage of Defendant's residence, the Court does not need address the "knock and talk" exception.

### B. Probable Cause for Search Warrant

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In determining whether an

affidavit establishes probable cause to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In order to establish probable cause to search, a warrant request "must state a nexus between the place to be searched and the evidence sought." United States v. Bethal, 245 Fed. Appx. 460, 464 (6th Cir. 2007) (internal citations omitted). "The belief that the items sought will be found at the location to be searched must be 'supported by less than *prima facie* proof but more than mere suspicion.'" Id. (quoting United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003)).

Defendant contends that the items observed by Sergeant Frazier, the cash and the "burn boat," are not necessarily indicative of methamphetamine use. Defendant explains that these items "are also certainly consistent with hundreds of other legal uses totally removed from methamphetamine use and sale." (Mot. to Suppress, DN 13, at 3). The United States points out that not only did Sergeant Frazier observe those two items in Defendant's residence, but also a K-9 unit alerted police to drugs in the red truck, the driver of which, fled Defendant's house. Police provided all this information in the warrant and the issuing judge concluded that probable cause existed to issue a warrant. The Court reviews a warrant issued by a judge with "great deference" to that judge's determination as to probable cause. Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). Even though Defendant describes the "burn boat" as just "aluminum foil," a judge "may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on

the nature of the evidence and the type of offense." United States v. Caicedo, 85 F3d 1184, 1192 (6th Cir. 1996) (quoting United States v. Lawson, 999 F.2d 985, 987 (6th Cir. 1993)). The Court finds the affidavit was sufficient to establish probable cause. As such, there is no reason to review the search under the good faith exception.

### III. CONCLUSION

For the foregoing reasons, Defendant Aaron Russell's motion to suppress the evidence obtained as a result of a search of 804 Pennbrooke Avenue is **DENIED** [DN 13].

*[Signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 17, 2013

cc: Counsel of Record